Erik R. Puknys (SBN 190926)
erik.puknys@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.**
Stanford Research Park
3300 Hillview Avenue
Palo Alto, CA 94304-1203
Telephone: (650) 849-6600
Facsimile: (650) 849-6666

Lionel M. Lavenue (*pro hac vice* to be filed)
lionel.lavenue@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.**
1875 Explorer Street
Suite 800
Reston, VA 20190-6023
Telephone: (571) 203-2750
Facsimile: (571) 203-2777

Matthew C. Berntsen (*pro hac vice* to be filed)
matthew.berntsen@finnegan.com
Guanshi Li (*pro hac vice* to be filed)
guanshi.li@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.**
2 Seaport Ln
6th Floor
Boston, MA 02210-2001
Telephone: (617) 646-1600
Facsimile: (617) 646-1666

Attorneys for Petitioners
BAYERISCHE MOTOREN WERKE AG

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **In Re *Ex Parte* Application of Bayerische Motoren Werke AG for Order to Obtain Discovery for Use in Foreign Proceedings** | Misc. Action No.<br><br>**DECLARATION OF PROF. DR. TILMAN MÜLLER-STOY IN SUPPORT OF EX PARTE APPLICATION OF BAYERISCHE MOTOREN WERKE AG FOR ORDER PURSUANT TO 28 U.S.C. § 1782(A) TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS** |

I, Prof. Dr. Tilman Müller-Stoy, declare and testify as follows:

1. I am an attorney at law admitted to practice in Germany and as a representative before the European Unified Patent Court ("UPC"). I am a partner at the Munich office of the law firm Bardehle Pagenberg. I make this declaration based on my own personal knowledge and based on my understanding of Broadcom's and BMW's contemplated litigations against each other in Germany, as discussed below. If called as a witness, I could and would competently testify to the matters stated herein.

2. I submit this declaration in support of Bayerische Motoren Werke Aktiengesellschaft ("BMW AG" or "BMW") *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782(a) Granting Leave to Obtain Discovery for Use in Foreign Proceedings ("Application").

**PERSONAL BACKGROUND AND EXPERIENCE**

3. I studied law at the at the University of Regensburg, Germany, and the University of Aberdeen, United Kingdom and completed my *Referendariat* (legal clerkship) in the circuit of the Higher Regional Court Munich. I have been admitted as a *Rechtsanwalt* (attorney at law) to practice before the German courts since 2004. I specialized in global patent litigation since then and am recognized as a leading German patent litigator in all relevant lawyer directories.

4. In addition, I am an Honorary Professor for Patent Law at the Technical University of Munich and have been working as a visiting lecturer in IP Law at the Technical University of Munich since 2009. I am a frequent speaker at national and international conferences on patent litigation and patent law. I am a Board Member of LESI (Licensing Executive Society International) and LES Germany (Licensing Executive Society Germany).

5. I represented BMW AG in litigations in Germany, described more fully below.

**BACKGROUND OF THE DISPUTES BETWEEN BMW AG AND BROADCOM**

6. BMW AG is a world-renowned innovator and manufacturer of premium automobiles and motorcycles that designs and manufactures motor vehicles, parts, and other accessories for sale in Europe and for export and sale throughout the world. It is a corporation organized under the laws of the Federal Republic of Germany with its principal place of business at Petuelring 130, 80809 Munich, Germany.

7. In 2019 to 2020, Broadcom Inc. ("Broadcom"), through its predecessor Avago Technologies Limited ("Avago") including its subsidiaries Avago Technology International Sales Pte Ltd. and CA Inc., filed a series of lawsuits in the Düsseldorf Regional Court and the Mannheim Regional Court, in Düsseldorf and Mannheim, Federal Republic of Germany, accusing BMW of infringement of, among others, European patents Nos. EP 3,562,124; EP 1,644,859; EP 1,565,036; and EP 1,701,483, which are assigned to Broadcom or Avago. The disputes were eventually resolved following a worldwide license agreement between BMW and Avago.

8. As this license agreement is about to expire in 2026, Broadcom, in a letter dated July 31, 2025, asked to meet to negotiate an extension of the agreement.

9. In October 2025, Broadcom sent BMW a patent license proposal, on which Broadcom alleged that "BMW has moved into Broadcom's technology spaces" since the existing agreement and listed litigations filed against other car manufacturers and suppliers, as well as automotive companies that signed or renewed licenses with or without litigation. In particular, Broadcom listed its active patents from recent litigations in the automotive industry.

10. In November 2025, Broadcom sent a draft term sheet to BMW. The term sheet includes a price that is at least five times higher than the amount in the 2020 agreement.

11. In an email dated December 8, 2025, Broadcom confirmed its understanding that BMW was not planning to make a counteroffer.

12. On January 12, 2026, Broadcom sent an email to BMW with an attached "proud list" of Broadcom patents "relevant to BMW and its products and services" and noted in the email that "Broadcom's analysis of its portfolio and of BMW's products is ongoing."

## ANTICIPATED LITIGATIONS AND URGENCY

13. BMW AG is preparing to initiate a proceeding based on the parties' licensing agreement in order to resolve a contractual dispute before anticipated infringement litigation progresses further.

14. In my experience, such contractual proceedings and infringement proceedings typically turn on overlapping factual issues, including licensing history, patent ownership, and the scope of the

patent holder's asserted rights. If these disputes proceed in parallel, a party that is unable to obtain relevant evidence at an early stage may be prejudiced in one or more proceedings.

15. I am familiar with the recent decision in *Broadcom (Avago) v. Renault*, Case No. 7 O 7655/25, decided by the 7th Civil Chamber of the Regional Court of Munich I. In that proceeding, the court conducted a substantive analysis of an allegedly standard-essential patent ("SEP"), European Patent EP 1 903 733 ("EP '733"), and granted injunctive relief. That decision demonstrates that infringement actions involving EP '733 can proceed to an injunction on a quick timeline within a year before the Regional Court of Munich I, probably even quicker, because the court has already analyzed the EP '733 patent and is familiar with it.

16. Broadcom in the *Renault* case has represented that at least the EP '733 patent, which is in the "proud list" it presented to BMW—is standard-essential and subject to fair, reasonable, and non-discriminatory ("FRAND") licensing obligations.

17. Based on my experience with German SEP litigation, the questions of whether a patent is in fact standard-essential, and whether and when the patent holder internally determined that status, is a fact-intensive issue that is directly relevant under German law to both non-infringement defenses and FRAND-defenses.

18. Based on Broadcom's public standardization and licensing conduct, it is my opinion that it is reasonable for BMW to anticipate litigation in Germany or in the UPC.

**SECTION 1782 APPLICATION**

19. I have reviewed the discovery that BMW AG seeks through its § 1782 Application. I believe that the discovery will materially assist the German courts in adjudicating the dispute between the parties. This discovery has not been produced in the contemplated infringement lawsuit by Broadcom or the contemplated declaratory judgment proceeding by BMW ("German Contemplated Litigations" or "Contemplated Litigations in Germany"). The discovery Applicant seeks is generally in the following categories:

a) patent licensing agreements and related communications;

b) ownership/procurement and standing materials for the patents listed in a "proud list," which was provided to BMW ("Listed Patents"); and

c) internal analyses tied to Broadcom's licensing and enforcement strategy.

20. This information will be critical for BMW AG's arguments and defenses in the German Contemplated Litigations. As I will explain below, German courts do not allow discovery into this information.

21. Documents evidencing purchase, license, settlement agreements and negotiations will enable BMW AG to assess whether Broadcom's estimated value-in-dispute in the German proceedings is reasonable and allow to more fairly calculate a reasonable royalty rate for any licenses of one or more of the Listed Patents. The value of the Listed Patents, as evidenced by their purchase price and any royalties paid for their use, is information that German courts can use to determine the value-in-dispute of the German Contemplated Litigations.[1]

22. The licensing-related communications are important for BMW's arguments and defenses as well, because if Broadcom made statements regarding claim scope during its licensing negotiations that are inconsistent with the positions it takes in the German Contemplated Litigations, German courts would at least consider these representations when construing claims for infringement and validity purposes, for instance as an indication for the understanding of the person skilled in the art.

23. Additionally, in German litigation the losing side is responsible for paying attorneys' fees to the victor. To determine the amount of attorneys' fees, the court references a chart based on the litigation's value (value-in-dispute). The value-in-dispute in a patent infringement action is to be determined by the German infringement court based on the economic interest that is objectively being pursued by the plaintiff in its legal action. The minimum of the value-in-dispute can be calculated based on reasonable royalties for which a major indicator here may be any royalty rates Broadcom

---

[1] To support my view, I refer to Kühnen, *Handbook of Patent Infringement (Handbuch der Patentverletzung)*, 17th Edition 2026, available at: https://research.wolterskluwer-online.de/document/b319e1f6-1950-3f32-b206-4910d6c1ebb0 (Chapter J). The decisive factor is the economic interest that the plaintiff objectively pursues with his action ¶159 Chapter J, Kühnen. An assessment of reasonable royalties over the remaining lifetime of the patent-in-suit can provide a mathematical indication for the determination of the value in dispute by calculating the royalties to which the plaintiff would presumably be entitled if the infringing acts continued until the expiration of the patent-in-suit ¶196 Chapter J, Kühnen.

demands from its licensees, its purchase price of the patent, and or settlement demands. In addition, prior license and settlement agreements are relevant to whether BMW AG is already licensed. As such, Broadcom's license agreements regarding the Listed Patents, the royalty rates or payments for those licenses, as well as communications surrounding these licensing efforts (e.g., discussing payments, rates, or claim scope), are all relevant to BMW's positions in the Contemplated Litigations in Germany. In a German nullity action, the value-in-dispute is usually determined on the basis of the value-in-dispute in the infringement proceedings plus 25%.

24. With respect to standing, the assignment histories of the Listed Patents are relevant to Broadcom's standing to sue BMW AG. Under German law, the patent proprietor registered in the patent register is generally authorized to initiate legal proceedings. However, when a patent has been transferred and the new proprietor of the patent asserts, in its own name, for example claims for the past, such as damages and claims for information and accounting, covering a period before the new patent was transferred to the new proprietor the new patent proprietor must, if contested, prove that these claims have been effectively assigned to the new patent proprietor. The necessary proof includes proving that those who executed any assignments had the signatory authority to do so. If the assignment of patent rights was part of a foreign transaction, the German court must also determine that the assignment complied with the relevant foreign law. The complete agreement (or agreements), to the extent it exists, is necessary to evaluate Broadcom's standing to sue BMW AG.

25. Based on my experience, obtaining relevant evidence at an early stage is critical for a defendant in German courts to meaningfully assert FRAND-based defenses and to address the risk of injunctive relief before such relief becomes imminent.

26. In my experience, information concerning a patent holder's internal analyses of standard essentiality, its internal assessment of FRAND obligations, and the manner in which it develops and justifies portfolio-wide royalty demands is relevant in German SEP proceedings. Such information bears directly on whether the patent holder has complied with its FRAND obligations, whether its licensing demands are discriminatory or excessive, and whether the grant of injunctive relief would be permissible under German law in infringement proceedings involving alleged standard-essential patents.

**PATENT SYSTEM IN GERMANY AND AUTHORITY OF THE GERMAN COURT**

27. In the European patent system, patent applicants may seek a single European Patent at the European Patent Office. Once granted, this patent splits into parts by the countries designated in the application. In contrast to patent infringement proceedings in United States district courts, Germany has a "bifurcated" patent litigation system in which separate courts handle questions of patent infringement and patent validity. The German Regional Courts ("Landgericht" in German) hear patent infringement actions. The German Federal Patent Court ("Budespatentgericht" in German) hears "nullity" actions. Nullity actions are proceedings brought by a party to challenge the validity of a patent. Germany also bifurcates liability and damages phases of patent trials, with the damages phase commencing only after liability is found.

28. Since 2023, holders of European bundle patents, such as Broadcom/Avago, also have the option to assert such European patents before the Unified Patent Court ("UPC"). The UPC is a supranational court established by the Agreement on a Unified Patent Court and has jurisdiction over European patents and Unitary Patents in participating European Union Member States. The UPC has authority to adjudicate claims of patent infringement and validity with effect across multiple participating states in a single proceeding. Proceedings before the UPC are conducted independently of national court actions and may proceed in parallel with litigation pending before German courts.

29. In general, the patent proprietor registered in the patent register is authorized to initiate infringement proceedings. This is true for the German courts and the UPC.[2] When a patent is transferred and the new proprietor of the patent asserts, in its own name, for example claims for the past, such as damages and claims for information and accounting covering a period before the new patent was transferred to the new proprietor, the new patent proprietor has, if sufficiently contested, to prove that such claims have been duly assigned to the new patent proprietor, including but not limited to, providing proof of the signatory authority of the individuals who executed any assignments.

---

[2] For a Unitary Patent, the UPC looks to the European Patent Register. For a classic European Patent that has been validated in Germany, the German Patent and Trademark Office ("DPMA") maintains a national register.

In case such assignment of rights was part of a foreign transaction subject to foreign law, the German courts also must assess whether such assignment was valid under foreign law.

30. In Germany, attorneys' fees are granted to the victor in litigation by rule. To determine the amount of attorneys' fees, the German courts reference a chart based on the litigation's value-in-dispute. This value-in-dispute in a patent infringement action is, in turn, to be determined based on the economic interest that is objectively being pursued by the plaintiff in its legal action. The minimum of the value-in-dispute is reflected by reasonable royalties for which a major indicator here may be any royalty rates Broadcom demands from its licensees. German courts will also consider a patent owner's statements discussing its claims in its licensing communications when construing claim terms in the asserted patents in patent infringement proceedings.

31. Germany is a civil law country where the concept of discovery and/or document production does not exist under procedural law, in contrast to the U.S. system as a common law system. Furthermore, under German law, the German Court does not have authority to compel a foreign national residing and/or located outside Germany to appear in a German court to provide testimony. The same applies to UPC proceedings.

32. Thus, the German Court and the UPC cannot compel Broadcom to produce the documents or provide the testimony identified in BMW AG's proposed discovery requests, even though those documents are directly relevant and material to the issues raised in the Contemplated Litigations in Germany, as this U.S. court can. The German Court can only request the submission of documents specifically identified or referred to by a party of the German Contemplated Litigations, and does not have the authority to investigate, or to order the investigation of facts or documents not already specified by the parties to the action.

## RECEPTIVITY OF THE GERMAN COURT TO EVIDENCE PROCURED THROUGH U.S. ASSISTANCE

33. While the German Court and the UPC cannot itself order discovery through § 1782, it will nevertheless be receptive to evidence obtained through § 1782 proceedings in the United States. Under German law, any documents obtained in a U.S. Application pursuant to 28 U.S.C. § 1782 can be formally introduced into the German proceedings by offer of proof, and the German Court would—

without prejudice to its decision about the admission and consideration of the particular document introduced according to general German rules regarding the admissibility of evidence—accept such offer of proof. Moreover, any transcript of sworn testimony given under oath, such as a U.S. deposition of the type requested by BMW AG, can be formally introduced into the German Contemplated Litigations by offer of proof of the document, and the German court would—without prejudice to its decision about the admission and consideration of the particular document introduced as evidence according to general German rules regarding the admissibility of evidence—accept such offer of proof. The same should apply to the UPC.

34. Specifically, due to the constitutional right of access to the courts according to Art. 103 ¶ 1 of the German Basic Law, and the obligation to take into account the facts of the case to the extent possible (and necessary) according to Section 286 ¶ 1 of the German Code of Civil Procedure, German courts generally have to take into consideration all evidence submitted into the proceedings (Federal Supreme Court, decision of 19 June 2002, NJOZ, 2002, 2019 *et seq.*). While there is to my knowledge no German Federal Supreme Court decision addressing the issue of § 1782 discovery specifically, the Federal Supreme Court has confirmed that the enforcement of a U.S. judgment in Germany is not precluded due to it being based on evidence obtained in pre-trial discovery proceedings in the United States (Federal Supreme Court, decision of 4 June 1992, NJW 1992, 3096, 3099, holding that the reliance on evidence obtained through discovery does not violate German public order). This holding has been interpreted in German literature as supporting the submission of evidence obtained under Section 1782 discovery proceedings. Once submitted in the German Contemplated Litigations, the court will then consider the documents or testimony. *See, e.g.*, *Schönknecht*, Beweisbeschaffung in den USA zur Verwendung in deutschen Verfahren, GRURint 2011, 1000, 1007 with reference to *Eschenfelder*, Verwertbarkeit von Discovery-Ergebnissen in deutschen Zivilverfahren, RIW 2006, 443,447; *see also Müller-Stoy,* Grundzüge des U.S.-amerikanischen Patentverletzungsverfahrens, GRUR Int. 2005, 558, 563). Furthermore, there is no law, rule of evidence, or rule of procedure in German court proceedings that prohibits a party from seeking discovery pursuant to § 1782, and then using any evidence obtained through a § 1782 application in German court proceedings.

35. As the German courts would accept the formal introduction of the requested documents and testimony by offer of proof, the ordering of such discovery by a court in the United States would not offend the German court.

36. I am not aware of any court decision prohibiting the use of information and documents, such as license agreements, which were obtained under discovery proceedings under 28 U.S.C. § 1782 in German patent infringement proceedings, although discovery proceedings under 28 U.S.C. § 1782 for use in German patent infringement proceedings or declaratory judgment proceedings occur from time to time.

37. The same should apply to the UPC although there is not yet respective case law available.

38. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 27th day of March 2026, at Munich, Germany.

Dated: March 27, 2026

By:______________________________
Prof. Dr. Tilman Müller-Stoy
Attorney at Law