Erik R. Puknys (SBN 190926)
erik.puknys@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.**
Stanford Research Park
3300 Hillview Avenue
Palo Alto, CA 94304-1203
Telephone: (650) 849-6600
Facsimile: (650) 849-6666

Lionel M. Lavenue (*pro hac vice*)
lionel.lavenue@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.**
1875 Explorer Street
Suite 800
Reston, VA 20190-6023
Telephone: (571) 203-2750
Facsimile: (571) 203-2777

Matthew C. Berntsen (*pro hac vice*)
matthew.berntsen@finnegan.com
Guanshi Li (*pro hac vice*)
guanshi.li@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.**
2 Seaport Lane
6th Floor
Boston, MA 02210-2001
Telephone: (617) 646-1600
Facsimile: (617) 646-1666

Attorneys for Petitioner
BAYERISCHE MOTOREN WERKE AG

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **In Re *Ex Parte* Application of Bayerische Motoren Werke AG for Order to Obtain Discovery for Use in Foreign Proceedings** | Misc. Action No. 5:26-mc-80092-VKD<br><br>**CORRECTED EX PARTE APPLICATION OF BAYERISCHE MOTOREN WERKE AG FOR ORDER PURSUANT TO 28 U.S.C. § 1782(a) TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS AND SUPPORTING MEMORANDUM OF LAW** |

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION: BMW SEEKS TARGETED DISCOVERY NECESSARY TO DEFEND AGAINST IMMINENT GERMAN LITIGATIONS ........................................1

II. FACTUAL BACKGROUND: BROADCOM'S LITIGATION HISTORY AND ESCALATING ENFORCEMENT THREATS MAKE LITIGATION IMMINENT.........2

A. Broadcom Sued BMW for Patent Infringement Before; the Prior Litigations Settled with a Licensing Agreement That Is About to Expire. ...............................2

B. Broadcom's Standardization Activities and Industry-Facing Licensing Positions ...............................................................................................4

III. ARGUMENT: BMW'S PETITION SATISFIES § 1782, AND THE *INTEL* FACTORS COMPEL GRANTING THE APPLICATION ..............................................5

A. BMW's Application Satisfies Section 1782's Statutory Requirements ..................5

B. The *Intel* Discretionary Factors Weigh in Favor of Granting BMW's Application...............................................................................................8

1. BMW Cannot Obtain the Information it Needs Through German Discovery. ...........................................................................................8

2. German Courts are Receptive to Information Obtained Through United States Discovery.........................................................................................9

3. BMW's Application Respects, Rather Than Circumvents, German Proof-Gathering Rules. ............................................................................11

4. BMW's Narrowly Tailored Requests Are Proportionate, Highly Relevant, and Not Unduly Burdensome. .................................................12

a) Broadcom's Licensing Agreements Are Central to Determining Reasonable Royalties and Litigation Value Under German Law. ........................................................................................14

b) Broadcom's Prior Licenses and Failed Licensing Efforts Bear Directly on Validity and Claim Scope in German Courts. ............15

c) Broadcom's SEP Licensing History Is Critical to Resolving FRAND Disputes and Injunctive Relief Exposure. .......................16

d) Broadcom's Statements to the OPEN Alliance Are Probative of Licensing Scope and FRAND Compliance. .................................17

e) Broadcom's Patent Assignment History Is Necessary to Determine Standing and Enforceability Under German Law........17

IV. CONCLUSION: THE COURT SHOULD GRANT BMW'S REQUESTED DISCOVERY.......................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Broadcom Corporation et al.*,
No. 2:19-mc-51481, Dkt. 4 (E.D. Mich. Oct. 16, 2019) .... 6, 9, 11

*Clear with Computers, LLC v. Bergdorf Goodman, Inc.*,
753 F. Supp. 2d 662 (E.D. Tex 2010) .... 14

*Conopco, Inc. v. Warner-Lambert Co.*,
No. Civ.A. 99-101(KSH), 2000 WL 342872 (D.N.J. Jan. 26, 2000) .... 15

*Cryolife, Inc. v. Tenaxis Med., Inc.*,
No. C08-05124 HRL, 2009 WL 88348 (N.D. Cal. Jan. 13, 2009) .... 6, 10

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
633 F.3d 591 (7th Cir. 2011) .... 9, 10, 13

*High Point SARL v. Sprint Nextel Corp.*,
No. 09-2269-CM-DJW, 2011 WL 3241432 (D. Kan. July 29, 2011) .... 14, 15, 16

*Implicit Networks, Inc. v. Juniper Networks, Inc.*,
No. C 10-04234 SI, 2012 U.S. Dist. LEXIS 103884 (N.D. Cal. July 23, 2012) .... 15

*In re Apple Inc.*,
No. MISC 12-80013 JW, 2012 WL 1570043 (N.D. Cal. May 2, 2012) .... 6, 10

*In re Application of Bayerische Motoren Werke AG, et al.*,
No. 20-mc-80127-JCS, Dkt. 13 (N.D. Cal. Aug. 13, 2020) .... 9

*In Re Ex Parte Application of Bayerische Motoren Werke AG and BMW Bank GmbH*,
Case No. 3:20-mc-80127, (N.D. Cal. Oct. 26, 2020) .... 3

*In re Ex Parte Application of Bayerische Motoren Werke AG and BMW Bank GmbH*,
No. 4:20-mc-80077-KAW, Dkt. 13 (N.D. Cal. May 21, 2020) .... 8

*In re Ex Parte Application of Bayerische Motoren Werke AG and BMW Bank GmbH*,
No. 5:19-mc-80272-WHO, Dkt. 11 (N.D. Cal. Nov. 13, 2019) .... 8, 9, 11, 12

*In re Ex Parte Application of Broadcom Corp. and Avago Tech.*,
No. 5:19-mc-80133, Dkt. 6 (N.D. Cal. Jun. 27, 2019) .................................................. 6, 9, 10, 11

*In re Google Inc.*,
No. 14-mc-80333-DMR, 2014 WL 7146994 (N.D. Cal. Dec. 15, 2014) ...................................... 11

*In re HYBE Co., Ltd.*,
No. 5:25-MC-80176, 2025 WL 3280894 (N.D. Cal. Nov. 25, 2025) .............................................. 6

*In re Letters Rogatory from Tokyo Dist. Prosecutor's Office, Tokyo, Japan*,
16 F.3d 1016, 1020 (9th Cir. 1994) ........................................................................................ 5

*In re LG Elect. Deutschland GmbH*,
No. 12-CV-1197-LAB (MDD), 2012 WL 1836283 (S.D. Cal. May 21, 2012) .............................. 5

*In re MSTG, Inc.*,
675 F.3d 1337 (Fed. Cir. 2012) ............................................................................................ 15

*In re Republic of Ecuador*,
No. C-10-80225 MISC CRB (EMC), 2010 WL 3702427 (N.D. Cal. Sept. 15, 2010) ..................... 5

*In re Varian Med. Sys. Int'l AG*,
No. 16-mc-80048-MEJ, 2016 WL 1161568 (N.D. Cal. Mar. 24, 2016) ................................... 6, 10

*In re: Petition for subpoena of Nintendo of North America*,
No. 2:19-cv-966, Dkt. 27 (W.D. Wash. Oct. 8, 2019) ........................................................ 6, 9, 11

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004) ......................................................................................................... passim

*Koninklijke Philips N.V. v. Wangs Alliance Corp.*,
No. 14-12298-DJC, 2018 U.S. Dist. LEXIS 607 (D. Mass. Jan. 2, 2018) .................................... 15

*Matsushita Electric Industrial Co., Ltd. v. Mediatek, Inc.*,
No. C-05-3148 MMC (JCS), 2007 WL 963975 (N.D. Cal. Mar. 30, 2007) .................................. 15

*Matter of Lufthansa Technik AG*,
No. C17-1453-JCC, 2019 WL 331839 (W.D. Wash. Jan. 25, 2019) .......................................... 6, 9

*Minatec Fin. S.A.R.L. v. SI Group Inc.*,
No. 1:08–CV–269 (LEK/RFT), 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) ........................... 11

*Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*,
254 F.R.D. 568 (N.D. Cal. 2008)........................................................................... 14, 15

*Sony Electronics, Inc. v. Guardian Media Technologies, Ltd.*,
497 F.3d 1271 (2007).......................................................................................... 7

*Via Vadis Controlling GmbH v. Skype, Inc.*,
107 U.S.P.Q.2d 1184, 2013 WL 646236 (D. Del. 2013)...................................... 10, 11

**Statutes**

28 U.S.C. § 1782(a) ........................................................................................ 1, 5, 12, 18

**Rules**

Fed. R. Civ. P. 26(a) ........................................................................................ 13

**Other Authorities**

*Broadcom (Avago) v. Renault*,
No. 7 O 7655/25 (LG Munchen I 2025) ............................................................ 4, 16

## I. INTRODUCTION: BMW SEEKS TARGETED DISCOVERY NECESSARY TO DEFEND AGAINST IMMINENT GERMAN LITIGATIONS

Bayerische Motoren Werke Aktiengesellschaft ("BMW" or "Applicant") submits this *Ex Parte* Application for an Order to Obtain Discovery for Use in Foreign Proceedings pursuant to 28 U.S.C. § 1782(a) from Broadcom Inc. ("Broadcom"). Broadcom and BMW had entered into a licensing agreement regarding Broadcom's global patent portfolio owned by its predecessor Avago Technologies Limited through its subsidiary Avago Technologies International Sales Pte. Ltd. (collectively, "Avago"),[1] but Broadcom has threatened filing an infringement lawsuit against BMW upon the agreement's expiration. BMW needs the requested discovery to defend itself from Broadcom's allegations.

This would not be first infringement suit between the parties. In 2019-2020, various Broadcom entities, including Broadcom Corp., CA Inc, and Avago Technologies International Sales Pte. Ltd., as the assignee, brought multiple lawsuits against BMW for alleged patent infringement of, among others, European Patents Nos. EP 3,562,124; EP 1,644,859; EP 1,565,036; and EP 1,701,483. For each of the listed patents, BMW petitioned for, and was granted § 1782 discovery in this District.

Avago and BMW subsequently resolved the disputes and signed a patent licensing agreement in October 2020. As the present licensing agreement is about to expire soon, Broadcom proposes to renew it at a price many times higher than the original amount in the 2020 licensing agreement. When BMW refused to counter these inflated offers, Broadcom threatened to sue.

BMW seeks narrowly tailored discovery from Broadcom focused on (i) patent licensing agreements and related communications, (ii) ownership/procurement and standing materials for the patents on Broadcom's "proud list" that was disclosed to BMW, and (iii) internal analyses tied to

---

[1] On February 1, 2016, Avago Technologies Limited, a Singaporean company, acquired Broadcom Corporation and renamed the merged company Broadcom Limited. Avago Technology International Sales Pte Ltd, was a subsidiary of Avago Technology Limited. In 2018, Broadcom Limited was redomiciled as Broadcom Inc. headquartered in Palo Alto, California. Avago Technology International Sales Pte. Ltd. still exists as a subsidiary of Broadcom Inc. *See* Company History, Broadcom.com, https://www.broadcom.com/company/about-us/company-history (last visited March 13, 2026); *see also* Avago Technologies Limited – List of Subsidiaries, SEC.gov, https://www.sec.gov/Archives/edgar/data/1441634/000144530511003592/ex211.htm (last visited March 13, 2026).

Broadcom's licensing and enforcement strategy. This targeted discovery is necessary for BMW to defend itself against Broadcom's allegations of infringement in imminent proceedings before German courts and the Unified Patent Court ("UPC"). This information, however, is unavailable through German or UPC civil procedure, which does not provide mechanisms comparable to U.S. discovery to compel production of these materials, and Broadcom has refused to provide it. Thus, BMW seeks an order to authorize subpoenas requiring Broadcom, a resident of Palo Alto, California, in impending patent infringement actions in Germany, to provide specific documents and make itself available for a deposition for use in connection with the contemplated litigation actions.

Notably, the Supreme Court has held that there is no reason to deny a 1782 petition merely because a proceeding is not actually pending at the time the petition is made. In fact, it has emphasized that the fact that discovery is being sought from a party not yet involved in overseas litigation is an especially compelling reason for granting a 1782 petition. Moreover, in a situation like this, where there might be concerns about the confidentiality of party and third-party information, Section 1782(a) provides a uniquely elegant solution because the Court can enter an appropriate protective order to protect the confidentiality interests of parties and non-parties alike.

For the reasons discussed below, the statutory requirements of § 1782(a) are satisfied here. And the factors that influence a court's discretion to allow such discovery weigh in favor of granting BMW's Application. Accordingly, the Court should grant BMW's Application.

## II. FACTUAL BACKGROUND: BROADCOM'S LITIGATION HISTORY AND ESCALATING ENFORCEMENT THREATS MAKE LITIGATION IMMINENT

### A. Broadcom Sued BMW for Patent Infringement Before; the Prior Litigations Settled with a Licensing Agreement That Is About to Expire.

BMW is a world-renowned designer and manufacturer of motor vehicles, parts, and other accessories, which are offered for sale in Europe and for export and sale throughout the world.

Broadcom is a corporation organized under the laws of the State of Delaware with its principal place of business at 3421 Hillview Avenue, Palo Alto, California 94304, which is located within this District and the State of California. *See* Contact Us, Broadcom.com, https://www.broadcom.com/company/contact#locations (last visited March 13, 2026). Avago was a

Singaporean predecessor company of Broadcom and is the assignee of at least some of Broadcom's patents. *See* Avago Technologies Limited – List of Subsidiaries, SEC.gov, https://www.sec.gov/Archives/edgar/data/1441634/000144530511003592/ex211.htm (last visited March 13, 2026).

In 2019 to 2020, Broadcom, though its predecessor and patent assignee Avago, filed a series of lawsuits in German courts, alleging BMW of patent infringement over a portfolio of European patents. Declaration of Prof. Dr. Tilman Müller-Stoy, ¶ 7. Following these litigations, BMW petitioned for, and was approved for, discovery under § 1782. These petitions include:

| Case Number | Filed Against | Filed By | District |
|---|---|---|---|
| 5:19-mc-80272 | Broadcom Corp.<br>Broadcom Inc.<br>Broadcom Technologies Inc. | Bayerische Motoren Werke AG<br>BMW Bank GmbH | Northern District of California |
| 4:20-mc-80077 | Broadcom Inc. | Bayerische Motoren Werke AG<br>BMW Bank GmbH | Northern District of California |
| 3:20-mc-80127 | Broadcom Inc. | Bayerische Motoren Werke AG<br>BMW Bank GmbH | Northern District of California |

On October 20, 2020, BMW and Avago resolved their dispute and withdrew all claims in the German litigations by agreeing to a worldwide license to the patents for a limited period and entering into a covenant not to sue during the same limited period. Declaration of Prof. Dr. Tilman Müller-Stoy ¶ 7; *See In Re Ex Parte Application of Bayerische Motoren Werke AG and BMW Bank GmbH*, Case No. 3:20-mc-80127, (N.D. Cal. Oct. 26, 2020).[2]

On July 31, 2025, months before the licensing agreement's expiration, Broadcom sent a letter to BMW, requesting to schedule an in-person meeting to negotiate an extension to the licensing agreement. Declaration of Prof. Dr. Tilman Müller-Stoy ¶ 8.

Two months later, on October 8, 2025, Broadcom and BMW held a meeting. At the meeting, Broadcom presented to BMW a patent licensing proposal. Declaration of Prof. Dr. Tilman Müller-Stoy ¶ 9. In the proposal, Broadcom claimed that it invented and continues to invent fundamental

---

[2] The Patent License Agreement is confidential. However, BMW is amenable to working with Broadcom to provide a redacted copy to the Court if so ordered.

technologies. *Id.* Broadcom also alleged that BMW has moved into Broadcom's technology spaces since the existing agreement. *Id.* Broadcom listed litigations filed against other car manufacturers (OEMs) and suppliers, as well as automotive companies that signed or renewed licenses with or without litigation. In particular, Broadcom listed its active patents from recent litigations in the automotive industry. *Id.*

Two weeks after presenting BMW with the proposal, Broadcom followed up with a draft term sheet. Broadcom proposed a renewal agreement, but with a price multiple times more expensive than the amount in the original licensing agreement in 2020. Declaration of Prof. Dr. Tilman Müller-Stoy ¶ 10.

Broadcom confirmed its understanding that BMW does not plan to make a counteroffer in an email dated December 8, 2025. Declaration of Prof. Dr. Tilman Müller-Stoy ¶ 11.

On January 12, 2026, Broadcom followed up with a "proud list" of Broadcom patents ("Listed Patents") "relevant to BMW and its products and services," and noted that "Broadcom's analysis of its portfolio and of BMW's products is ongoing." Declaration of Prof. Dr. Tilman Müller-Stoy ¶ 12. Notably, EP 1903733 ("EP '733") on the "proud list" is alleged to be a standard-essential patent ("SEP") asserted in a recent case No. 7 O 7655/25 in the 7th Civil Chamber of the Regional Court of Munich. *Broadcom (Avago) v. Renault*, No. 7 O 7655/25 (LG Munchen I 2025). The Munich court in its recent decision in February 2026 granted Avago an injunction against Renault for infringement of the alleged SEP. Declaration of Prof. Dr. Tilman Müller-Stoy ¶ 15.

**B. Broadcom's Standardization Activities and Industry-Facing Licensing Positions**

In addition to Broadcom's enforcement history and negotiations with BMW, Broadcom's public standardization and licensing conduct provides critical factual context for the disputes that BMW reasonably anticipates will be litigated in Germany and in the UPC. Declaration of Prof. Dr. Tilman Müller-Stoy ¶ 16.

Beginning in at least 2011, Broadcom publicly presented its BroadR-Reach and related automotive Ethernet technologies to the OPEN Alliance, an industry consortium focused on the development of open, interoperable in-vehicle networking standards. *See* e.g., Declaration of Erik R. Puknys, Exhibit C ("Broadcom Introduces World's Broadest Automotive Ethernet Product Portfolio

– Ushers in next Generation Connected Car"). In presentations made to OPEN Alliance members, Broadcom described BroadR-Reach technology as part of an open ecosystem intended for adoption across the automotive supply chain. *Id.* Those presentations included descriptions of licensing structures associated with Broadcom's automotive Ethernet technology. *Id.*

Broadcom continued to participate in industry standardization efforts relating to automotive Ethernet technologies while expanding its patent portfolio in this area. *See* Broadcom: Driving the future of automobile connectivity, Broadcom B-Connected Blog, https://www.broadcom.com/blog/broadcom-driving-the-future-of-automobile-connectivity (last visited March 13, 2026). During the parties' October 2025 licensing discussions, Broadcom referenced its existing licensing arrangements with other automotive companies and suppliers in connection with its valuation of the portfolio offered to BMW. Declaration of Prof. Dr. Tilman Müller-Stoy ¶ 9. BMW needs access to the terms and structures of those other licensing arrangements to meaningfully participate in licensing negotiations with Broadcom and provide a counter to Broadcom's sizeable licensing-fee increase. *Id.* ¶ 10.

## III. ARGUMENT: BMW'S PETITION SATISFIES § 1782, AND THE *INTEL* FACTORS COMPEL GRANTING THE APPLICATION

### A. BMW's Application Satisfies Section 1782's Statutory Requirements

Section 1782 aims to "provid[e] efficient means of assistance to participants in international litigation in our federal courts and encourag[e] foreign countries by example to provide similar means of assistance to our courts." *In re Republic of Ecuador*, No. C-10-80225 MISC CRB (EMC), 2010 WL 3702427, at *1 (N.D. Cal. Sept. 15, 2010) (citations omitted). Discovery under § 1782 is as broad as discovery obtained during ordinary district court litigation. *See In re Letters Rogatory from Tokyo Dist. Prosecutor's Office, Tokyo, Japan*, 16 F.3d 1016, 1020 (9th Cir. 1994). In fact, United States courts are encouraged to grant Section 1782 applications because "our courts favor broad discovery generally." *In re LG Elect. Deutschland GmbH*, No. 12-CV-1197-LAB (MDD), 2012 WL 1836283, at *3 (S.D. Cal. May 21, 2012). Moreover, "[s]ection 1782(a) does not limit the provision of judicial assistance to 'pending' adjudicative proceedings," but allows discovery for use in foreign proceedings that have not yet commenced. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 258 (2004).

Courts routinely hold that courts may grant an application when the following statutory requirements are satisfied: "(1) the discovery sought is from a person residing in the district court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an 'interested person.'" *In re Apple Inc.*, No. MISC 12-80013 JW, 2012 WL 1570043, at *1 (N.D. Cal. May 2, 2012); *In re HYBE Co., Ltd.*, No. 5:25-MC-80176, 2025 WL 3280894 (N.D. Cal. Nov. 25, 2025). BMW's request for discovery meets each of these statutory requirements.

First, BMW seeks discovery from a Northern District of California resident. Broadcom is headquartered at 3421 Hillview Ave, Palo Alto, California 94304. *See* Contact Us, Broadcom.com, https://www.broadcom.com/company/contact (last visited March 13, 2026). Thus, Broadcom is found in the Northern District of California for Section 1782 purposes. *See, e.g.*, *Cryolife, Inc. v. Tenaxis Med., Inc.*, No. C08-05124 HRL, 2009 WL 88348, *2 (N.D. Cal. Jan. 13, 2009) (finding "resides or is found" requirement satisfied where the target of discovery had its principle place of business in the district in which the action is brought); *Matter of Lufthansa Technik AG*, No. C17-1453-JCC, 2019 WL 331839, at *1 (W.D. Wash. Jan. 25, 2019) (holding that target of discovery "resides in this district or can be found in this district" where it had a "main office" in Kirkland, Washington).

Second, the discovery BMW seeks is "for use in a proceeding before a foreign tribunal." This Court considers German courts "tribunals" under § 1782. *See In re Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *3 (N.D. Cal. Mar. 24, 2016). That no case has yet been filed in Germany is irrelevant. "Section 1782(a) does not limit the provision of judicial assistance to 'pending' adjudicative proceedings," but allows discovery for use in foreign proceedings that have not yet commenced. *Intel*, 542 U.S. at 258. Accordingly, this Court, the Western District of Washington, and the Eastern District of Michigan previously allowed discovery of Broadcom Corp. and Avago under § 1782 for use in German proceedings. *In re Ex Parte Application of Broadcom Corp. and Avago Tech.*, No. 5:19-mc-80133, Dkt. 6 (N.D. Cal. Jun. 27, 2019); *In re: Petition for subpoena of Nintendo of North America*, No. 2:19-cv-966, Dkt. 27 (W.D. Wash. Oct. 8, 2019); *Broadcom Corporation et al.*, No. 2:19-mc-51481, Dkt. 4 (E.D. Mich. Oct. 16, 2019).

Even under U.S. courts' relatively stringent standard for declaratory judgment standing, courts have recognized important distinctions when negotiations are accompanied by explicit or implicit litigation threats. For example, the Federal Circuit has observed that threats of litigation, express or implied, have always been sufficient to demonstrate a case or controversy that gives rise to declaratory judgment jurisdiction. *Sony Electronics, Inc. v. Guardian Media Technologies, Ltd.*, 497 F.3d 1271, 1284 (2007). This is true even when the patentee has expressed a willingness to engage in licensing negotiations. *Id.* at 1286 (stating that a "patentee's apparent continued willingness to engage in licensing negotiations did not prevent competitor from maintaining declaratory judgment suit" where an actual controversy had been established). So licensing discussions do not preclude a finding that there exists a justiciable case or controversy if other objective factors support that conclusion.

Here, there can be little doubt that litigation is imminent. Broadcom has informed BMW about its litigations against other parties. Declaration of Prof. Dr. Tilman Müller-Stoy ¶ 9. After the licensing negotiations between BMW and Broadcom were at an impasse, Broadcom escalated its threats of litigation by sending a "proud list" and notifying BMW of "ongoing analysis" of its patent portfolio and of BMW's products. *Id.* ¶ 12. Such threats unquestionably establish there is a justiciable case or controversy between BMW and Broadcom.

Moreover, in response to Broadcom's threats, BMW is contemplating initiating a declaratory judgment proceeding arising out of the parties' existing licensing agreement to resolve their contractual rights and obligations before infringement litigation advances further. That proceeding would concern whether, and under what circumstances, Broadcom may assert the Listed Patents against BMW in light of the parties' prior settlement, license, and course of dealing. As with the contemplated German infringement actions, the declaratory judgment proceeding would turn on overlapping factual issues—including licensing history, patent ownership, and Broadcom's asserted enforcement rights—making the discovery sought here directly relevant and necessary. Declaration of Prof. Dr. Tilman Müller-Stoy ¶¶ 19-26. The likelihood of parallel proceedings further confirms that litigation between the parties is imminent rather than speculative, and that BMW must begin obtaining relevant evidence now to avoid prejudice as these disputes proceed on accelerated timelines.

Third, BMW will be the defendant in the impending German infringement actions and any potential damages actions, and a potential plaintiff in any responsive German nullity actions or opposition proceedings that would be filed in the Opposition Division of the European Patent Office (EPO), so it is an "interested person." *See Intel*, 542 U.S. at 256-59 (stating that "'interested person' plainly reaches beyond the universe of persons designated 'litigant,'" and that § 1782 requires the proceeding to be only "within reasonable contemplation").

BMW's Application therefore satisfies the statutory requirements for a § 1782 application, just as this Court previously found these statutory requirements satisfied with respect to BMW's two prior § 1782 applications. *See In re Ex Parte Application of Bayerische Motoren Werke AG and BMW Bank GmbH*, No. 5:19-mc-80272-WHO, Dkt. 11, at 4–5 (N.D. Cal. Nov. 13, 2019); *In re Ex Parte Application of Bayerische Motoren Werke AG and BMW Bank GmbH*, No. 4:20-mc-80077-KAW, Dkt. 13 (N.D. Cal. May 21, 2020).

## B. The *Intel* Discretionary Factors Weigh in Favor of Granting BMW's Application

In *Intel*, the Supreme Court provided a non-exhaustive list of factors that district courts may consider when deciding whether to grant Section 1782 applications: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding" because "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is otherwise "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65.

### 1. BMW Cannot Obtain the Information it Needs Through German Discovery.

The first *Intel* factor favors applications seeking discovery from non-parties to the foreign tribunal. *See id.* at 264 ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782 aid."). In *Intel*, the Supreme Court expressed its concern that a party to a

foreign litigation would use Section 1782 to obtain evidence that it could have obtained through foreign procedure in the foreign tribunal. *Id.* This concern does not apply to German courts, which do not allow the extent of discovery allowed in the United States. *See, e.g.*, *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011) (authorizing Section 1782 discovery because German litigant could not "obtain even remotely comparable discovery by utilizing German procedures").

As in the case here, German courts do not allow discovery into, for example: (1) how Broadcom and its predecessor Avago procured the asserted patents and whether they have standing sue; (2) licensing or settlement agreements regarding the asserted patents; or (3) existing licensing agreements on products along the supply chain of BMW's products. Declaration of Prof. Dr. Tilman Müller-Stoy ¶¶ 19-20, 31-32; *see Heraeus Kulzer*, 633 F.3d at 597; *see also Matter of Lufthansa Technik AG*, 2019 WL 331839, at *2 ("[A]lthough Intervener is a participant in the pending proceedings [in Germany and elsewhere], the lack of effective discovery mechanisms available to Petitioner in those countries weighs in favor of allowing Petitioner to obtain the discovery material via § 1782."). Therefore, this factor is at least neutral. *See, e.g.*, *Heraeus Kulzer*, 633 F.3d at 597.

Importantly, the courts found this factor neutral in the prior Broadcom Applications. *In re Ex Parte Application of Broadcom Corp. and Avago Tech.*, No. 5:19-mc-80133, Dkt. 6 (N.D. Cal. Jun. 27, 2019); *In re: Petition for subpoena of Nintendo of North America*, No. 2:19-cv-966, Dkt. 27 (W.D. Wash. Oct. 8, 2019); *Broadcom Corporation et al.*, No. 2:19-mc-51481, Dkt. 4 (E.D. Mich. Oct. 16, 2019). And, this Court previously found this factor neutral with respect to BMW's first § 1782 application. *See Bayerische Motoren Werke*, No. 5:19-mc-80272-WHO, Dkt. 11, at 5 (N.D. Cal. Nov. 13, 2019); *see also In re Application of Bayerische Motoren Werke AG, et al.*, No. 20-mc-80127-JCS, Dkt. 13 (N.D. Cal. Aug. 13, 2020).

**2. German Courts are Receptive to Information Obtained Through United States Discovery.**

A decision to grant a 1782 application should "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. The question for the second *Intel* factor is not whether the petitioner could obtain discovery in

the foreign tribunal, but whether the German court would consider the information the petitioner seeks. *See id.* at 260 ("Beyond shielding material safeguarded by an applicable privilege, however, nothing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there."). In the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of Section 1782, this factor weighs in favor of granting a Section 1782 petition. *See Cryolife*, 2009 WL 88348, at *3; *Via Vadis Controlling GmbH v. Skype, Inc.*, 107 U.S.P.Q.2d 1184, 2013 WL 646236, at *2 (D. Del. 2013) ("As the parties opposing discovery, Respondents bear the burden of proof on this issue.").

Importantly, the Northern District has explained that, absent "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of Section 1782, courts tend to err on the side of permitting discovery." *In re Varian Med. Sys.*, 2016 WL 1161568, at *4 (internal quotations and citations omitted) (concluding that this factor weighed in favor of discovery because there was "no evidence or case law suggesting that the Mannheim District Court would be unreceptive to the discovery Varian seeks"); *see also In re Apple Inc.*, 2012 WL 1570043, at *2. Many other cases also recognize the receptiveness of German courts to the use of discovery obtained through Section 1782. *See, e.g.*, *Heraeus Kulzer*, 633 F.3d at 596 ("And there is no indication that the German court . . . would refuse to admit evidence that Heraeus obtained through U.S. discovery and could not have obtained by utilizing the procedures of German law for evidence gathering."); *Cryolife*, 2009 WL 88348, at *3 (concluding that the second *Intel* factor weighed in favor of discovery where there was "no basis to conclude that the German court would be unreceptive to the information requested by [the applicant].").

German courts are generally receptive to information obtained through Section 1782 applications. Declaration of Prof. Dr. Tilman Müller-Stoy ¶¶ 33-37. And the German courts presiding over the impending German litigations would accept the formal introduction of the requested documents and testimony by offer of proof, the ordering of such discovery by this Court would not offend the German court. *Id.* ¶ 35. Indeed, this Court and the Eastern District of Michigan found this factor favored discovery in the prior Broadcom Applications. *In re Ex Parte Application of Broadcom Corp. and Avago Tech.*, No. 5:19-mc-80133, Dkt. 6 (N.D. Cal. Jun. 27, 2019); *Broadcom Corporation*

*et al.*, No. 2:19-mc-51481, Dkt. 4 (E.D. Mich. Oct. 16, 2019). And, this Court found that this factor favored discovery with respect to BMW's first § 1782 application. *See Bayerische Motoren Werke*, No. 5:19-mc-80272-WHO, Dkt. 11, at 6 (N.D. Cal. Nov. 13, 2019).

As explained in Section III.B.4 below, the requested discovery will materially assist the German tribunal in adjudicating damages, injunctive relief, and threshold enforceability issues, and there is no indication, let alone authoritative proof, the German courts would reject evidence obtained via § 1782. Declaration of Prof. Dr. Tilman Müller-Stoy ¶¶ 20-26, 37.

Thus, the second *Intel* factor weighs decisively in favor of discovery.

**3. BMW's Application Respects, Rather Than Circumvents, German Proof-Gathering Rules.**

Next, the district court should consider whether the petitioner is seeking "to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265; *see also Via Vadis*, 107 U.S.P.Q.2d at *2 (finding applicant's filing § 1782 application after foreign court's refusal to force respondent to produce requested discovery "in essence circumvent[s] the foreign courts' rules").

German and UPC litigation procedure do not provide for discovery, but there is no indication it forbids it either. To the contrary, as noted in the pervious section, German courts allow the use of discovery obtained through Section 1782. *See In re Google Inc.*, No. 14-mc-80333-DMR, 2014 WL 7146994, at *3 (N.D. Cal. Dec. 15, 2014); *Minatec Fin. S.A.R.L. v. SI Group Inc.*, No. 1:08–CV–269 (LEK/RFT), 2008 WL 3884374, at *7 (N.D.N.Y. Aug. 18, 2008) ("we find neither any rejection nor offense taken by the German tribunals to a stateside discovery order"). Prof. Dr. Müller-Stoy's Declaration also establishes that German courts and the UPC do not forbid a party from seeking in the United States the discovery BMW seeks. Declaration of Prof. Dr. Tilman Müller-Stoy ¶¶ 33-37. The U.S. courts found this factor favored discovery in the prior § 1782 petitions involving Broadcom. *In re Ex Parte Application of Broadcom Corp. and Avago Tech.*, No. 5:19-mc-80133, Dkt. 6 (N.D. Cal. Jun. 27, 2019); *In re: Petition for subpoena of Nintendo of North America*, No. 2:19-cv-966, Dkt. 27 (W.D. Wash. Oct. 8, 2019); *Broadcom Corporation et al.*, No. 2:19-mc-51481, Dkt. 4 (E.D. Mich. Oct. 16, 2019). And this Court found that this factor favored discovery with respect to BMW's first

§ 1782 application. *See Bayerische Motoren Werke*, No. 5:19-mc-80272-WHO, Dkt. 11, at 7 (N.D. Cal. Nov. 13, 2019).

Thus, this factor weighs in favor of this Court's granting BMW's Application.

**4. BMW's Narrowly Tailored Requests Are Proportionate, Highly Relevant, and Not Unduly Burdensome.**

Discovery under § 1782 is as broad as discovery under the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 1782(a). But the Court may "trim" requests that are unduly intrusive or burdensome. In *Intel*, the Supreme Court stated that "unduly intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 U.S. at 265. Here, BMW's requests are limited to discrete categories directly tied to damages, fair, reasonable, and non-discriminatory ("FRAND")/injunctive relief, and threshold enforceability issues in the contemplated German actions:

1) previous agreements and licensing communications involving the Listed Patents, which are relevant at least to BMW's accounting and damages, value of litigation, invalidity, and noninfringement arguments (*see, e.g.*, BMW's document request nos. 1 and 2; BMW's deposition topics 2–3);
2) the procurement of the Listed Patents, which is relevant to at least Broadcom's standing to assert them and BMW's noninfringement and procedural defenses (*see, e.g.*, BMW's document request nos. 5 and 20; BMW's deposition topics 5 and 20);
3) analyses of Broadcom's patents other potential licensees conducted, and the scope of Broadcom's business activity related to patent licensing and enforcement (BMW's document request no. 23 and BMW's deposition topic 23).

This information is directly relevant to BMW's defense against allegations of infringement in the upcoming German litigations, and to potential related damages proceedings. Declaration of Prof. Dr. Tilman Müller-Stoy ¶¶ 19-20.

Moreover, a deposition is necessary because key evidence about Broadcom's valuation positions and negotiation rationale—including how Broadcom interprets and applies prior licenses to BMW—may not be reflected in documents. To the extent deposition testimony is needed on ownership

and transfer issues, it is narrowly directed to the assignment and standing questions addressed below in the section on patent assignment history.

BMW's requests are narrowly tailored, and they are much more focused than typical discovery requests in U.S. patent litigation. For example, the information BMW seeks regarding licensing agreements with OEMs, suppliers, and certain semiconductor companies are relevant to BMW's damages and procedural positions in the German Actions, as well as BMW's positions regarding the availability of injunctive relief. *See, e.g.*, Fed. R. Civ. P. 26(a)(2)(B)(i-ii). However, German courts do not provide discovery processes, such as those available in American courts, which would allow BMW to obtain this important information from Broadcom. Declaration of Prof. Dr. Tilman Müller-Stoy at ¶¶ 31-32; *see also Heraeus Kulzer*, 633 F.3d at 597 ("Heraeus cannot obtain even remotely comparable discovery by utilizing German procedures. . . ."). So, BMW seeks targeted discovery relating to licensing agreements mentioned in Broadcom's licensing proposal. Moreover, the scope of discovery BMW seeks is narrower than the scope of discovery Broadcom Corp. and Avago sought and were granted in this Court, the Western District of Washington, and the Eastern District of Michigan in the Broadcom Applications.[3]

With regard to the subpoena being addressed to Broadcom's predecessor Avago and other subsidiaries, Broadcom's own licensing presentations to BMW confirm that licensing decisions are made based on portfolio-wide considerations, competitor licensing benchmarks, and asserted increases in BMW's adoption of Broadcom technology across product lines. Declaration of Prof. Dr. Tilman Müller-Stoy ¶ 9. As a result, responsive documents and testimony are reasonably expected to be in the

[3] For instance, from Harman, Broadcom requested "[a] copy of any documentation provided to [Harman] by MICREL regarding the architecture, functionality, or programmability of the MICREL CHIP or its corresponding driver software" (Request No. 6). From Nintendo, Broadcom requested "any documentation received, either directly or indirectly, from Nvidia Corporation, Nvidia Ltd., or any other Nvidia entity, regarding the functionality or programmability of any NVIDIA Tegra® X1 products (or products based on the NVIDIA Tegra® X1 that are customized or otherwise modified) . . ." (Request No. 15) and "each document that refers or relates to the RIVA TNT™, OpenGL, DirectX 6.0, DirectX 7.0, or DirectX 8.0 that Nvidia provided to Nintendo since October 18, 2017" (Request Nos. 16–18). From Nvidia, Broadcom requested each technical reference manual, Programmer's Guide, other manual, diagram, or schematic for the RIVA TNT graphics accelerator chip (Request Nos. 1–3); source code for the Mesa 3D OpenGL, OpenGL ICD, DirectX 6.0 D3D, and Open GL drivers for the RIVA TNT graphics accelerator chip, and for the Nvidia Tegra X1 (Request Nos. 5–8, 23); and each public document from before May 7, 1999 that describes Riva TNT, OpenGL 1.2m, or DirectX 6.0 (Request Nos. 10–12).

possession, custody, and control of multiple Broadcom and Avago entities and business units and cannot be artificially cabined to a single nominal patent owner without depriving BMW of core evidence relevant to damages, FRAND, and standing.

**a) Broadcom's Licensing Agreements Are Central to Determining Reasonable Royalties and Litigation Value Under German Law.**

Licensing agreements and related materials are relevant because they will enable BMW to more fairly calculate a reasonable royalty rate for a license of the Listed Patents. Declaration of Prof. Dr. Tilman Müller-Stoy at ¶ 21.[4] This information will also enable BMW to argue for a reasonable value of litigation, which will be used by German courts to calculate attorneys' fees that have to be reimbursed by the losing party to the winning party at the end of the case. *Id.* ¶ 22. The value of the Listed Patents, as evidenced by reasonable royalties paid for their use, is one measure German courts use to determine the value of litigation. *Id.*[5] And, Broadcom's licensing communications will explain any discrepancies in royalty rates between Broadcom's licensees, as well as reveal Broadcom's failed licensing attempts. *Id.*; *see also Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 582 (N.D. Cal. 2008); *High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM-DJW, 2011 WL 3241432, *5 (D. Kan. July 29, 2011); *Clear with Computers, LLC v. Bergdorf Goodman, Inc.*, 753 F. Supp. 2d 662, 664 (E.D. Tex 2010).

Existing licenses with semiconductor companies are relevant for at least two reasons. First, they provide comparable benchmarks that inform reasonable royalty and damages analyses taking into account in particular that comparable licenses are considered highly relevant for SEPs by German courts and the UPC which are subject to FRAND licensing obligations. Second, they may show that

---

[4] Germany bifurcates liability and damages portions of patent trials, with the damages phase of trial beginning only once liability is found. Declaration of Prof. Dr. Tilman Müller-Stoy at ¶¶ 27-28. Nevertheless, discovery into damages issues in the German contemplated litigations is appropriate at least because Section 1782 allows discovery for use in foreign proceedings that have not yet commenced. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 258 (2004).

[5] *See also* Kühnen, *Handbook of Patent Infringement (Handbuch der Patentverletzung)*, 12th Edition, ¶ 346 (stating that the value in dispute depends on the importance of the legal right at issue [the patent-in-suit], its remaining term, and the extent of the violation of the legal right [the scope of infringement]); *id.* at ¶ 170 (explaining that value of litigation may be based on calculation of hypothetical royalties).

portions of BMW's products are already licensed somewhere in the supply chain, which bears directly on accounting, damages, and the scope of any alleged infringement.

**b) Broadcom's Prior Licenses and Failed Licensing Efforts Bear Directly on Validity and Claim Scope in German Courts.**

Previous licenses and failed licensing attempts (discoverable only by examining Broadcom's licensing communications) are also relevant to commercial/market success of the Listed Patents, which German courts and the UPC will examine when evaluating the inventive step of a patent to decide its validity. *See* Federal Supreme Court 30 IIC 805 (1999).[6] Moreover, Broadcom may have made statements regarding claim scope during its licensing negotiations that are contrary to positions Broadcom will assert in litigation. *See Conopco, Inc. v. Warner-Lambert Co.*, No. Civ.A. 99-101(KSH), 2000 WL 342872, *6 (D.N.J. Jan. 26, 2000). The foreign courts will at least consider these representations when construing claims for infringement and validity purposes as indications for the understanding of the person skilled in the art. Declaration of Prof. Dr. Tilman Müller-Stoy ¶ 22. *Cf. High Point*, 2011 WL 3241432, at *5 ("[R]equiring the disclosure of only consummated agreements would 'fail[] to acknowledge that licensing and infringement positions may be taken and discarded or otherwise changed over time based on a myriad of extrinsic factors that could well be relevant to another party accused of infringement.'") (quoting *Phoenix Solutions*, 254 F.R.D. at 582).

Conducting the impending litigations without this information would be unfair to BMW, which is why courts consistently find licensing and communications surrounding licensing discoverable. *See Implicit Networks, Inc. v. Juniper Networks, Inc.*, No. C 10-04234 SI, 2012 U.S. Dist. LEXIS 103884, *3 (N.D. Cal. July 23, 2012) (licensing negotiations discoverable); *In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012) (same); *Matsushita Electric Industrial Co., Ltd. v. Mediatek, Inc.*, No. C-05-3148 MMC (JCS), 2007 WL 963975, *5 (N.D. Cal. Mar. 30, 2007) (same); *Koninklijke Philips N.V. v. Wangs Alliance Corp.*, No. 14-12298-DJC, 2018 U.S. Dist. LEXIS 607, *17 (D. Mass. Jan. 2, 2018) (licensing correspondence "is relevant not only for invalidity and infringement but also damages");

[6] *See* http://www.ub.edu/centredepatents/pdf/doc_dilluns_CP/pagenberg_Patent_Enforcement_and_Litigation.pdf at 156.

*High Point*, 2011 WL 3241432, *5 ("Other courts have found a patent holder's correspondence with third parties related to licensing negotiations to be relevant in patent infringement suits. Courts have found it relevant to ascertaining the extent of liability formulating an appropriate litigation strategy, infringement and validity of the patents at issue, whether prior licenses are comparable, and calculation of reasonable royalty.").

**c) Broadcom's SEP Licensing History Is Critical to Resolving FRAND Disputes and Injunctive Relief Exposure.**

Broadcom contends that portions of its portfolio—including patents asserted in recent German actions—are standard-essential and subject to FRAND licensing obligations. *See Broadcom (Avago) v. Renault*, No. 7 O 7655/25 (LG Munchen I 2025); *see also* Declaration of Prof. Dr. Tilman Müller-Stoy ¶ 16. Whether, when, and on what basis Broadcom internally determined that particular patents are standard-essential is a fact-intensive inquiry directly relevant to both infringement defenses and injunctive relief exposure under German law. Declaration of Prof. Dr. Tilman Müller-Stoy ¶ 17.

BMW's requested discovery therefore seeks documents and testimony concerning Broadcom's internal analyses of standard essentiality, its evaluation of FRAND obligations, and the methodologies used to set and justify portfolio-wide royalty demands. This information bears directly on whether Broadcom has complied with its FRAND duties, whether its asserted royalty demands are discriminatory or excessive, and whether injunctive relief would be proportionate or permissible in the German litigations. Declaration of Prof. Dr. Tilman Müller-Stoy ¶ 26.

Moreover, the recent decision in *Broadcom (Avago) v. Renault* in the 7th Civil Chamber of the Regional Court of Munich underscores the urgency of BMW's § 1782 application. In that case, the court has already conducted a substantive analysis of EP '733 and granted injunctive relief, demonstrating that infringement actions involving this patent can proceed to injunction on an accelerated timeline. Declaration of Prof. Dr. Tilman Müller-Stoy ¶ 15. Because Broadcom has identified EP '733 as relevant to BMW and has made clear that litigation will follow absent a renewed license, BMW faces a concrete risk that an infringement action could result in an injunction within a year, and probably in a matter of months. *Id.* Initiating this § 1782 proceeding now is therefore

necessary to ensure that BMW can obtain critical evidence in time to meaningfully defend itself before injunctive relief becomes imminent. *Id.* ¶ 17.

In light of this accelerated risk, BMW is also preparing to initiate a declaratory judgment proceeding based on the parties' licensing agreement to resolve their contractual dispute before infringement litigation progresses further. Because both proceedings would turn on overlapping factual issues—including licensing history, patent ownership, and Broadcom's asserted rights—BMW must begin obtaining relevant discovery now to avoid prejudice as these disputes move forward on parallel tracks.

**d) Broadcom's Statements to the OPEN Alliance Are Probative of Licensing Scope and FRAND Compliance.**

Broadcom's communications and presentations to the OPEN Alliance and its individual members are independently relevant to BMW's defenses. In those industry-facing forums, Broadcom promoted its BroadR-Reach and related technologies as part of an open, interoperable ecosystem, and articulated specific licensing models and royalty structures intended to govern adoption across the supply chain. *See* e.g., Exhibit C.

Statements made by Broadcom to standards bodies and industry participants regarding the scope of its technology, the availability of licenses, and the intended allocation of licensing obligations are probative of claim scope, implied licenses, patent exhaustion, and FRAND compliance. Declaration of Prof. Dr. Tilman Müller-Stoy ¶ 21. They also bear directly on whether BMW products are already licensed through upstream suppliers and whether Broadcom's current enforcement posture is consistent with its prior representations to the industry.

Because these materials are uniquely within Broadcom's possession and were created outside the context of litigation, they provide highly probative, non-duplicative evidence that German courts routinely consider when assessing infringement, validity, and proportionality of injunctive relief.

**e) Broadcom's Patent Assignment History Is Necessary to Determine Standing and Enforceability Under German Law.**

Last, the assignment histories of the Listed Patents are relevant to Broadcom's and Avago's standing to sue BMW. Under German law, only the actual patent proprietor is authorized to initiate

legal proceedings. Declaration of Prof. Dr. Tilman Müller-Stoy ¶ 24. When a patent has been transferred and the new proprietor of the patent asserts, in its own name, claims for the past, such as damages and claims for information and accounting, covering a period before the new patent was transferred to the new proprietor, the new patent proprietor must prove that these claims have been assigned effectively to the new patent proprietor. *Id.* The necessary proof includes proving that those who executed any assignments had the signatory authority to do so. *Id.* If the assignment of patent rights was part of a foreign transaction, the German court must also determine that the assignment complied with the relevant foreign law. *Id.*

As such, the information BMW seeks is highly relevant to the contemplated litigations and is commensurate with the minimal burden its production will place upon Broadcom. BMW requests a narrow set of specific documents related to relevant litigation information. Similarly, BMW's proposed deposition topics are narrow and concrete. Thus, any burden on Broadcom is outweighed by the obvious relevance of the information BMW seeks, which BMW needs to fairly make out its case in Germany and before the UPC. This factor therefore weighs in favor of granting BMW's Application. Each category of discovery sought corresponds directly to enumerated deposition topics and document requests tailored to discrete defenses—such as SEP determination, portfolio valuation and enforcement analyses, and industry standardization conduct—rather than to any generalized inquiry into Broadcom's business.

In short, BMW seeks targeted, category-limited discovery narrowly tailored to discrete defenses, not the expansive technical discovery typical of U.S. patent litigation.

## IV. CONCLUSION: THE COURT SHOULD GRANT BMW'S REQUESTED DISCOVERY

For the reasons discussed above, BMW respectfully requests that this Court enter the proposed order submitted concurrently with this filing pursuant to § 1782(a) authorizing BMW to obtain limited discovery from Broadcom as set forth in the proposed Rule 45 subpoenas attached as Corrected Exhibits A and B.

Dated: April 17, 2026

By: /s/ *Erik R. Puknys*
Erik R. Puknys

Attorney for Petitioner
BAYERISCHE MOTOREN WERKE AG

*Of Counsel*:

Lionel M. Lavenue (*pro hac vice*)
lionel.lavenue@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.**
1875 Explorer Street
Suite 800
Reston, VA 20190-6023
Telephone:(571) 203-2750
Facsimile: (571) 203-2777

Matthew C. Berntsen (*pro hac vice*)
matthew.berntsen@finnegan.com
Guanshi Li (*pro hac vice*)
guanshi.li@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.**
2 Seaport Lane
6th Floor
Boston, MA 02210-2001
Telephone:(617) 646-1600
Facsimile: (617) 646-1666